No. 25-2790

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

Matthew L. Stewart,
Plaintiff-Appellant,

v.

Nissan North America, Inc. and Nissan Motor Acceptance Corporation,
Defendant-Appellees.

---

Appeal from the United
States District Court for the
Northern District of Illinois
No. 1:22-cv-04734
The Honorable Jorge L. Alonso

---

## DEFENDANTS-APPELLEES' BRIEF

---

### FOLEY & LARDNER LLP

Jeffrey Kopp (MI Bar No. P59485)
500 Woodward Avenue | Suite 2700
Tel: 313-234-7100
Fax: 312-234-2800
jkopp@foley.com
Amanda Hibbler (ARDC No. 6339104)
321 North Clark Street | Suite 3300
Chicago, Illinois 60654
Tel: 312-832-4500
Fax: 312-832-4700
ahibbler@foley.com

*Attorneys for Defendants-Appellees*

4933-6935-7738.3

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**
**Appellate Court No.: 25-2790**

Short Caption: Matthew Stewart, Plaintiff-Appellant v. Nissan North America, Inc. and Nissan Motor Acceptance Corporation, Defendants-Appellees

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[]      PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):
        Nissan North America, Inc. and Nissan Motor Acceptance Corporation

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
        Foley & Lardner LLP and McGuireWoods LLP

(3)     If the party or amicus is a corporation:
        i) Identify all its parent corporations, if any; and

        Nissan Motor Acceptance Corporation is a Delaware limited liability company that is wholly owned by Nissan North America, Inc. Nissan North America, Inc. is a wholly owned subsidiary of Nissan Motor Co., Ltd.

        ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

Nissan Motor Co., Ltd. is a publicly traded Japanese corporation that wholly owns Nissan North America, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:  N/A

(5)    Provide Debtor information required by FRAP 26.1(c) 1 & 2:  N/A

Attorney's Signature:  /s/ *Amanda Hibbler*    Date:  5/14/26

Attorney's Printed Name:        Amanda Hibbler

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes   x        No ___

Address:      321 N. Clark St., Ste. 3000, Chicago, IL 60654

Phone Number:     312.832.5175        Fax Number:     312.832.4700

E-Mail Address:     ahibbler@foley.com

ii

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ v

STATEMENT REGARDING ORAL ARGUMENT ....................................... 1

JURISDICTIONAL STATEMENT .................................................................. 1

ISSUES PRESENTED .................................................................................... 1

STATEMENT OF THE CASE ........................................................................ 1

    I.    Factual Background ........................................................................... 1

        A.    Nissan's Business and Relevant Equal Employment Opportunity Policies ................................................................. 1

        B.    Stewart's Employment with Nissan ...................................... 2

        C.    The 2020 Reorganization ........................................................ 2

        D.    Stewart's Applications to Other Positions ............................ 4

        E.    The P5 Hiring Decision ........................................................... 6

        F.    Plaintiff's Alleged Complaints ............................................... 7

    II.    Procedural Background ..................................................................... 7

SUMMARY OF ARGUMENT ......................................................................... 9

ARGUMENT .................................................................................................. 10

    I.    Standard of Review .......................................................................... 10

    II.    The District Court Properly Granted Summary Judgment as to P5 Because Stewart Failed to Establish That the P5 Decision Was Motivated By His Age ......................................................................... 11

        A.    Nissan Has Presented Undisputed Evidence of the Legitimate, Non-Discriminatory Reason for Hiring Anderberg for P5 ................. 11

        B.    Stewart Has Not Established That Nissan's Failure to Hire Him for P5 Was a Pretext for Age Discrimination ................................... 12

        C.    Stewart's Subjective Assessment of His Qualifications Do Not Establish Pretext .............................................................. 16

III.  Stewart's Reliance on Evidence Regarding the Broader Reorganization and Other Hiring Decisions Do Not Create a Triable Issue for the P5 Position ................................................................................................ 16

    A.  Plaintiff Does Not Connect the Reorganization to Age-Based Animus or the P5 Decision ................................................................. 18

    B.  Plaintiff Does Not Connect the Other Hiring Decisions to Any Age- Based Animus or the P5 Decision ............................................. 20

CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

Cases

*Carroll v. Lynch,*
  698 F.3d 561 (7th Cir. 2012) ............................................................ 10, 11

*Cunningham v. Austin,*
  125 F.4th 783 (7th Cir. 2025) ...................................................... 11, 12, 13

*Hartley v. Wisconsin Bell, Inc.,*
  124 F.3d 887 (7th Cir. 1997) ................................................................. 22

*Hasan v. Foley & Lardner, LLP,*
  552 F.3d 520 (7th Cir. 2008) ............................................................ 20, 23

*Joll v. Valparaiso Cmty. Sch.,*
  953 F.3d 923 (7th Cir. 2020) ............................................................ 20, 23

*O'Connor v. Consolidated Coin Caterers Corp.,*
  517 U.S. 308, 116 S. Ct. 1307 (1996) .................................................... 22

*Ortiz v. Werner Enterprises, Inc.,*
  834 F.3d 760 (7th Cir. 2016) ............................................................ 16, 17

*Serir v. Cmty. Coll. Dist. No. 514,*
  No. 21-2696, 2022 WL 807864 (7th Cir. Mar. 16, 2022) ................................. 20, 23

*Visser v. Packer Engineering Assoc., Inc.,*
  924 F.2d 655 (7th Cir. 1991) ................................................................. 15

*Walker v. Wexford Health Sources, Inc.,*
  940 F.3d 954 (7th Cir. 2019) ................................................................. 10

Statutes

29 U.S.C. § 626(d)(1)(B) ........................................................................ 8

Rules

Fed. R. Civ. P. 56(a) ............................................................................ 10

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees Nissan North America, Inc. ("NNA") and Nissan Motor Acceptance Corporation ("NMAC") (collectively, "Nissan") respectfully submit that oral argument is unnecessary in this matter because the single issue presented on appeal is straightforward and well-settled, and the briefs of the Parties adequately address the legal question raised. However, should this Court determine that oral argument would be helpful, Nissan is prepared to participate.

## JURISDICTIONAL STATEMENT

The jurisdictional statement of Plaintiff-Appellant Matthew Stewart ("Plaintiff" or "Stewart") is complete and correct.

## ISSUES PRESENTED

Whether the District Court properly granted summary judgment in Nissan's favor regarding Stewart's age discrimination claim alleging a failure to hire him for a Senior Fixed Operations Manager position ("P5") where the undisputed evidence establishes that the hiring manager for the P5 position selected another candidate based on that candidate's recent and directly relevant aftersales experience and where Stewart presented no evidence connecting the P5 hiring decision to his age.

## STATEMENT OF THE CASE

### I.     Factual Background

#### A.     Nissan's Business and Relevant Equal Employment Opportunity Policies

NNA is an automobile manufacturer that manufactures, imports, markets, and sells Nissan vehicles in the United States. (Dkt. 72 ¶ 1.) NMAC (a subsidiary of

NNA) is responsible for offering vehicle loan financing to authorized Nissan and Infiniti dealers in the United States. (*Id.*) Both NNA and NMAC divide their operations into geographic Districts, which are consolidated into Regions. (*Id.* ¶ 2.) Nissan is committed to equal employment opportunity for all employees and applicants and provides its employees with a work environment free from discrimination. (*Id.* ¶ 3.) Nissan makes decisions related to employment based on merit, qualifications, and competence without regard to age or any other protected characteristic. (*Id.* ¶ 4.)

### B.     Stewart's Employment with Nissan

Plaintiff began his employment with NNA in 2001, and by 2020, he worked as a Financial Services Manager ("FSM") for NMAC in the Wisconsin District. (*Id.* ¶ 5.) As an FSM, Stewart was responsible for serving as the primary contact between dealers in his District and NMAC for dealer financing, consumer credit, escalated customer assistance issues, and funding resolution, among other duties. (*Id.* ¶ 6.)

### C.     The 2020 Reorganization

In January 2020, NNA decided to eliminate two Regions, which resulted in NMAC eliminating the same two Regions. (*Id.* ¶8.) A group of NMAC employees, including Director of Sales Operations Eric Ledieu (age 46), Senior Manager of Sales Operations Mark Lubbers (age 41), Regional Financial Services Manager ("RFSM") John McBane (age 55), RFSM Nick Hungerford (age 41), and RFSM Jamie Beck (age 53) met multiple times and decided to create a team in Dallas, Texas called Signature Direct to serve smaller dealers on a remote basis, while the remaining large dealers

would continue to be served in person by FSMs within the new regional structure. (*Id.* ¶¶ 9–12.)

Nissan reorganized the remaining non-Signature Direct dealers left in the Districts to consolidate them into the remaining Regions. (*Id.*¶ 14.) In making these decisions, the RFSM in each Region considered the geography of the Region, the ratio of dealers to FSMs, and the size of the operation of each dealership. (*Id.* ¶ 15.) Nissan reassigned the dealers in Plaintiff's Wisconsin District to Signature Direct and three other nearby Districts and eliminated Plaintiff's District (which eliminated his position). (*Id.* ¶¶ 16, 18–19.) Six dealers from Stewart's (age 51) District were transferred to Signature Direct and serviced by Dan Pauken (age 39), eleven became part of the Minnesota/Wisconsin District already served by Ricardo Razo (age 36), one went to the Chicago Lakeside District already served by Ed Bilotto (age 53), and four went to the Chicago Suburbs District already served by Thomas Joyce (age 61). (*Id.* ¶ 5, 18.)

Other employees impacted by the reorganization were offered newly created FSM positions elsewhere within the company based on willingness to relocate, performance as an FSM, work experience, effectiveness, and aptitude for the position. (*Id.* ¶¶ 21–26.) Stewart was not considered for the open FSM positions because his Workday profile indicated he was not mobile and the RFSMs making these decisions – McBane and Lubbers – did not believe Stewart was willing to relocate. (*Id.* ¶¶ 24, 27–28.)

3

Ledieu made the recommendation to Vice President of Marketing and Sales Jim DeTrude (age 56) regarding the new Districts makeup, which employees were displaced, and who were to be offered new positions, which DeTrude approved. (*Id.* ¶ 13, 31.) Ultimately, eight employees separated as a result of the reorganization (ages 34, 47, 49, 50, 51, 53, 54, and 56). (*Id.* ¶¶ 5, 85–86.) Fifty-two FSMs were retained following the reorganization. (*Id.* ¶ 86.) Of the FSMs who were retained, 41 were 40 or older (or 79%), 30 were 45 or older (or 58%), and 19 were 51 or older (37%). (*Id.* ¶ 87.)

### D.      Stewart's Applications to Other Positions

On June 4, 2020, Nissan informed Stewart that his position was being eliminated in the reorganization and provided him a letter stating that his position would be eliminated on August 3, 2020 and listing options regarding his employment, including that he could voluntarily separate at any time, apply for open positions, or stay employed until August 3, at which point he would separate from employment and receive severance. (*Id.* ¶¶ 34–35.) Unable to secure other employment with Nissan, Plaintiff's employment terminated on August 4, 2020. (*Id.* ¶ 85.)

After learning his position was eliminated, Plaintiff applied to 10 positions:

- <u>Commercial Sales Manager – NV, UT, NM, CO, and AZ</u> ("P1"): The hiring manager, Travis Duncan, hired Phillip Sanchez (age 44) because Duncan determined that Stewart did not meet the preferred requirements for the role and believed Sanchez to be more qualified than Plaintiff. (*Id.* ¶¶ 37–41.) Nissan informed Plaintiff that he was not selected for the P1 position on June 25, 2020. (*Id.* ¶ 38.)

4

- Senior Dealer Operations Manager for Infiniti WI/MN ("P2"): The hiring manager, Robert Woerner, hired Dennis Renton (age 58) because Woerner believed Renton was more qualified than Plaintiff. (*Id.* ¶¶ 43–55.) Nissan informed Plaintiff that he was not selected for the P2 position on July 15, 2020. (*Id.* ¶ 43.)

- Upstream Remarketing Sales Manager - Dallas ("P3"): The hiring manager, Joshua Taylor, hired Greg Widenhouse (age 55) because Taylor believed Widenhouse was the most qualified candidate (*Id.* ¶¶ 48–49.)  Nissan informed Plaintiff that he was not selected for the P3 position on July 15, 2020. (*Id.* ¶ 47).

- Consumer Credit Manager – Dallas ("P4"): The hiring manager, Ryan Bush, hired Gregory White (age 51) because Bush believed White was more qualified than Plaintiff. (*Id.* ¶¶ 52–53.)

- Planner, Recalls & Campaigns ("P6"): The hiring manager, Henry Yu, hired John McDuffie (age 57) because Yu believed that McDuffie was more qualified than Plaintiff. (*Id.* ¶¶ 62–64.) Nissan informed Plaintiff that he was not selected for the P6 position on July 28, 2020. (*Id.* ¶ 61.)

- Senior Planner, Client Journey Technology for Infiniti ("P7"): The hiring manager, Berna Acena, hired Andrew Chestnut (age 34) because Acena determined Plaintiff's background did not meet the preferred requirements for the position and believed Chesnut was more qualified. (*Id.* ¶¶ 65–68.)  Nissan informed Plaintiff that he was not selected for the P7 position on July 23, 2020. (*Id.* ¶ 66.)

- Commercial Sales Manager for LA, MS, and AL ("P8"): The hiring manager, Jerry Zielinski, hired Mark Namuth (age 62) because by the time Plaintiff applied,

5

Nissan had already offered Namuth the role and determined that Namuth was the most qualified candidate. (*Id.* ¶¶ 69–72.) Nissan informed Plaintiff that he was not selected for the P8 position on July 23, 2020. (*Id.* ¶ 70.)

- <u>Senior Fixed Operations Manager with Infiniti</u> ("P9"): The hiring manager, Woerner, hired Michael MacMechan (age 51) because Woerner closed the application since none of the initial candidates appeared qualified and appointed MacMechan who Woerner believed was qualified for the role. (*Id.* ¶¶ 73–76.) Nissan informed Plaintiff that he was not selected for the P9 position on July 28, 2020. (*Id.* ¶ 74.)

- <u>Senior Planner, Campaign Acceleration and Special Projects</u> ("P10"): The hiring manager, Yu, hired Jeffrey Campbell (age 49) because Yu believed Campbell was more qualified than Plaintiff. (*Id.* ¶¶ 77–80.) Nissan informed Plaintiff that he was not selected for the P10 position on July 22, 2020. (*Id.* ¶ 78.)

None of the decision makers involved in the reorganization and elimination of Plaintiff's position – not Ledieu, McBane, or DeTrude – contacted any of the hiring managers or recruiters regarding Plaintiff's application to these positions, and it is undisputed that the hiring managers did not have knowledge of any complaints by Plaintiff. (*Id.* ¶ 81.)

### E.    The P5 Hiring Decision

On July 16, 2020, Plaintiff applied for the Senior Fixed Operations Manager (IA) position ("P5"), for which Scott Harrison was the hiring manager. (*Id.* ¶ 54.) Harrison selected Erik Anderberg (age 32) for the position over Plaintiff because Harrison determined that Anderberg had worked aftersales at General Motors doing the same role in the same region as the P5 position, whereas Plaintiff had a small

window of aftersales experience 20 years prior and was not as qualified as Anderberg. (*Id.* ¶ 56.) Further, Anderberg had previously applied to another position at Nissan, and the Head of Aftersales for the Central Region, Greg Ebbs, told Harrison that Ebbs had interviewed Anderberg and was impressed with Anderberg's resume and felt he had the right experience for the role, whereas Plaintiff had experience in credit but lacked aftersales experience. (*Id.* ¶ 58.)

Like the other positions for which Plaintiff applied, none of the decision makers regarding the reorganization – not Ledieu, McBane, DeTrude – nor others, including his supervisor, Lisa Cicchini, or Human Resources Business Partner Camille Dessaw, ever contacted Harrison to discuss Stewart generally or discuss Stewart's candidacy for the P5 position, nor was Harrison aware of Plaintiff ever allegedly complaining of age discrimination. (*Id.* ¶ 81; Dkt. 122, 31:6–11, 82:22–84:20.)

### F.    Plaintiff's Alleged Complaints

Plaintiff alleges that, prior to his separation, he informed his supervisor Cicchini in July of 2020 that he was being targeted because of his age, and sometime around his exit interview on August 4, 2020, Plaintiff informed Dessaw that he believed he was being discriminated against because of his age. (Dkt 72 ¶¶ 82, 84.)

## II.    Procedural Background

On May 23, 2021, more than 300 days after Nissan informed Plaintiff that his position was being eliminated, Plaintiff filed a Charge of Discrimination with the EEOC. (Dkt. 72 ¶ 88.) On September 2, 2022, Stewart filed suit in the United States District Court for the Northern District of Illinois alleging discrimination and

7

retaliation under the Age Discrimination in Employment Act ("ADEA"). (Dkt. 3.) Stewart filed the operative First Amended Complaint on December 6, 2022. (Dkt. 14.)

Nissan moved for summary judgment on October 4, 2024, seeking dismissal of Plaintiff's First Amended Complaint in its entirety. (Dkt 70–72.) Plaintiff responded (dkt. 149, 156–57), Nissan replied (dkt. 168), and Plaintiff obtained leave to file a sur-reply (dkt. 181-1; 198). On September 10, 2025, the District Court granted Nissan's motion for summary judgment ("Order") and entered judgment in its favor. (Dkts. 204–05.)

The Order thoroughly addressed Plaintiff's claims and the undisputed material facts. First, the District Court found that the elimination of Stewart's position, which Nissan communicated to him on June 4, 2020, and Stewart's failure to hire claims as to P1, P2, P7, and P10 were untimely, because Stewart failed to bring them within 300 days of receiving notice of these employment actions as required by 29 U.S.C. § 626(d)(1)(B). (Dkt. 204, p. 4–7.) Further, the District Court found that no reasonable jury could find that Stewart was not hired for the P3, P4, P6, P8, or P9 positions because of his age since the individuals hired for these positions were not outside of Stewart's protected class. (*Id.,* p. 7–8.) As to his retaliation claims, the District Court found that no reasonable jury could conclude that Stewart was terminated or Nissan failed to hire him because of his complaints of age discrimination because he presented no evidence that the alleged recipients of his complaints, Cicchini and Dessaw, were involved in the hiring decisions for the at-

issue positions or that they informed any individuals responsible for those decisions. (*Id.*, p. 10–11.)

As for P5, the only position at issue in this appeal, the District Court found that Stewart had not put forth any evidence that the decision to hire Anderberg instead of Stewart was on the basis of Stewart's age. (*Id.*, p. 9–10.) The District Court further found that Harrison's and Ebb's decision to hire Anderberg had a basis in fact – namely, Anderberg's more recent and significant aftersales experience with General Motors – and Stewart presented no other evidence that could lead a reasonable jury to conclude that he was not offered the P5 job because of his age. (*Id.*)

Stewart appealed the Order. (Dkt. 206.)

## SUMMARY OF ARGUMENT

Appellant's Brief ("Plaintiff's Brief" or "Brief") is remarkable for what it concedes. Stewart does not appeal the dismissal of his termination, position elimination, or retaliation claims, nor does he dispute dismissal of his failure to hire claims related to positions P1, P2, P3, P4, P6, P7, P8, P9, or P10. What remains is a discrete decision not to hire Stewart for the P5 position made by a single manager, Harrison, who was not involved in the reorganization, did not know of any complaints made by Stewart, and is not connected to any allegedly ageist comment or other evidence suggesting animus against Stewart's age.

This appeal therefore presents a narrow question: whether a reasonable jury could conclude that Harrison's decision to hire Anderberg for the P5 position instead of Stewart was motivated by Stewart's age, rather than Anderberg's recent and

directly relevant aftersales experience. The answer is plainly no, as the District Court so determined.

Stripped of its extraneous narrative, Stewart's appeal rests on two contentions: (1) that he was more qualified than Anderberg and should have been hired for the P5 position; and (2) the District Court should have treated his mischaracterizations of the evidence related to the broader reorganization and other hiring decisions as proof of age-based animus by Harrison. Essentially, Stewart invites this Court to hold that summary judgment is always inappropriate in employment discrimination cases so long as a plaintiff can point to generalized unsupported suspicions of discriminatory animus somewhere else in the broader organization of their employer. That is not the law. This Court should disregard Plaintiff's proposed "facts," which are based on bare speculation and not otherwise supported by any evidence in the record. For these reasons, Nissan respectfully requests that the Court affirm the District Court's grant of summary judgment.

## ARGUMENT

### I.   Standard of Review

This Court reviews the District Court's grant of summary judgment *de novo* and can affirm the Order on any ground supported in the record. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). Summary judgment is appropriate where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Materiality depends on the underlying law; "'irrelevant or unnecessary' factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (internal citation omitted). "And a factual dispute is genuine when

10

'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. "Speculation and conjecture" and "metaphysical doubt" do not create genuine factual disputes. *Id*. at 564-65. Rather, the non-moving party must provide evidence of specific facts creating a genuine dispute. *Id*. at 564

## II. The District Court Properly Granted Summary Judgment as to P5 Because Stewart Failed to Establish That the P5 Decision Was Motivated By His Age

### A. Nissan Has Presented Undisputed Evidence of the Legitimate, Non-Discriminatory Reason for Hiring Anderberg for P5

The District Court properly found that Stewart put forward no evidence that the decision to hire Anderberg was on the basis of Stewart's age. An employer's genuine belief that one candidate's skillset makes them better suited for the job is a legitimate, nondiscriminatory rationale for a hiring decision, and a court should not second guess an employer's decision to weigh desired traits such as subject matter expertise and other intangibles. *Cunningham v. Austin*, 125 F.4th 783, 789 (7th Cir. 2025). Courts may not act as a super personnel department that reexamine an employer's business decision regarding hiring. *Id*. at 789.

Nissan has presented evidence of the legitimate, non-discriminatory reason for choosing Anderberg over Stewart, and it is not within the purview of this Court to second guess that decision. *See id*. Harrison selected Anderberg for the P5 position based on Anderberg's recent, directly relevant aftersales experience. (Dkt 72 ¶¶ 54–59.) Harrison testified to all of the following: (1) when he consulted with Ebbs regarding the P5 position, Ebbs suggested Harrison interview Anderberg because Ebbs believed Anderberg had the requisite experience, and stated that while Stewart

11

had experience in credit, he lacked aftersales experience; (2) he chose to move forward with Anderberg for the P5 position because Anderberg had recent aftersales experience with General Motors doing the exact same role they were hiring for in the same region, indicated a willingness to move to Iowa, and had experience working with dealers; and (3) he chose to hire Anderberg over Stewart because Stewart's role in aftersales was for a relatively short period in the distant past, while Anderberg had recent experience in the same region for which he was hired. (Dkt. 122, 40:2-13, 56:2–57:8, 59:25–60:5, 68:1–16, 71:18–72:5, 76:15–78:15.) This evidence articulates a legitimate, non-discriminatory reason for Nissan's hiring decision as to the P5 position. *See Cunningham*, at 789.

### B.     Stewart Has Not Established That Nissan's Failure to Hire Him for P5 Was a Pretext for Age Discrimination

Since Nissan has articulated a legitimate, nondiscriminatory reason for its decision regarding the P5 position, the burden falls to Stewart to offer sufficient evidence to create a genuine issue of material fact as to pretext. *Id.* "An otherwise legitimate, non-discriminatory hiring rationale is pretextual if the hiring manager did not 'sincerely believe[]' the rational when making his final decision." *Id.* In other words, Stewart must provide evidence that Harrison's reason in selecting Anderberg for the P5 position because of Anderberg's relevant aftersales experience was a lie or phony. *See id.* at 790. Plaintiff has not done so.

As it pertains to P5 specifically, Plaintiff points to only a few facts almost entirely unsupported by the record to contend that he has shown the decision not to hire him was pretextual: (1) the hiring managers had access to the employees' ages;

(2) Harrison knew that Stewart was a displaced employee; (3) P5 was not actually open because it was filled with a management directed transfer; (4) it took Anderberg a month after being told to apply to P5 to actually apply; and (5) Harrison lied to Stewart and told him the P5 role had been filled when it had not. (Plaintiff's Brief, pp. 36–38.) None of these "facts" show pretext.

First, Plaintiff provides no evidence whatsoever that Harrison had access to or considered his age in selecting Anderberg for P5. To be sure, none of the "evidence" cited by Plaintiff for this proposition in his Brief actually suggests that hiring managers generally had access to a candidate's age, and none of the evidence cited pertains to Harrison or the P5 position. (*See* Plaintiff's Brief, p. 36; Dkt. 149 ¶ 37.) This proposition is entirely unsupported and fails to establish pretext as to P5.

Second, Harrison's testimony that he had been told by Ebbs that Plaintiff was an employee who had been displaced by the 2020 reorganization does not demonstrate pretext, either. Even if Harrison had considered Plaintiff's displaced status in making the P5 hiring determination – which there is no evidence to suggest that he did – that would constitute a legitimate, non-discriminatory reason for the decision outside of the purview of this Court. *See Cunningham*, at 789. Plaintiff has proffered no evidence that knowledge of his displaced status is somehow related to his age. He has not, for example, provided any evidence that Harrison believed the reorganization was intended to displace older workers. Without more, this fact, too, fails to demonstrate pretext.

Third, Plaintiff's contention that P5 was filled with a management directed transfer is unsupported by the record. In support of this theory, Plaintiff cites Dkt. 149 ¶ 56, *citing* Anderberg Dep. Ex. 2, Nissan_000943. In addition to Plaintiff's failure to authenticate this document, nothing in this document suggests that P5 was filled with a management directed transfer. (Dkt. 149 ¶ 56; Dkt. 161-10 at Nissan_0000943.) Further, it is unclear how, if this were a management directed transfer, that would somehow show Plaintiff was not hired because of his age. Plaintiff has provided no evidence specific to the P5 position that suggests a management directed transfer regarding the position that was motivated by age-based animus. This argument, too, fails to show pretext.

Fourth, Plaintiff fixates on his belief that it took Anderberg a month between being told to apply to P5 and actually applying. For this proposition, Plaintiff cites Dkt 161-10 at Nissan–000934. (Plaintiff's Brief, p. 38.) In addition to Plaintiff's failure to authenticate this document, nothing in this document suggests that Anderberg was told to apply to P5 or that it took him a month to do so. (Dkt. 149 ¶ 56; Dkt. 161-10 at Nissan_0000934.) But even if it had taken Anderberg a month to apply, it remains unclear what Anderberg's decision to wait to apply to P5 has to do with Plaintiff's age discrimination claims. This argument also does not support pretext.

Finally, Plaintiff states that he believes that Harrison lied to him that the P5 position had already been filled prior to Plaintiff's termination on August 4, 2020 to demonstrate pretext. In support of this "fact," Plaintiff points only to his own

declaration wherein he states that he was told by Harrison on a non-specific date prior to August 4, 2020 that another candidate had been selected for P5, but Anderberg did not apply to P5 until September 2020. (Dkt. 150 ¶ 50.) Plaintiff provides no basis to support that he has personal knowledge as to when Anderberg applied to the P5 position, and the Court should thus disregard Plaintiff's unsupported speculation. *Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) ("Testimony about matters outside their personal knowledge is not admissible, and if not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary judgment.").

Even accepting Stewart's characterization of this communication from Harrison, an imprecise or premature statement about the status of a hiring decision does not, standing alone, permit an inference of age discrimination. At most, it reflects the typical imprecision of an ongoing hiring process for which there were multiple candidates. And even if true that Harrison communicated to Stewart that he did not get the P5 job prior to interviewing Anderberg, this sequence of events is consistent with Harrison's testimony that Stewart was not the most qualified candidate who applied for the P5 position, and around the same time that Ebbs had recommended Anderberg for the P5 position due to his qualifications prior to interviewing Anderberg, Ebbs also discussed Stewart's qualifications for the position with Harrison. (Dkt 122, 39:10–40:13, 56:1–21; 58:20–59:9; 59:25–60:18; 70:1–72:5.) Without more, Plaintiff fails to establish pretext.

15

C.    **Stewart's Subjective Assessment of His Qualifications Does Not Establish Pretext**

Plaintiff raises in his Statement of the Case that Anderberg received a Total Score Primary Questionnaire result of 200, while Stewart and another current employee who had applied to P5 had scores of 300. (Dkt. 136 75:5-21.) Insofar as he implies that this fact shows pretext, such argument is unpersuasive. Plaintiff has put forward no evidence as to how those scores were obtained, what they measured, how or if Nissan ever used such scores in its hiring decisions, and whether Harrison had access to the scores while making the P5 hiring decision. Harrison testified that he did not even know what those scores represent, and there is no other evidence these scores were considered at all in the hiring process for the P5 position. (*Id.* 47:24–48:23; 75:11–19.)  This evidence, too, fails to demonstrate pretext.

III.    **Stewart's Reliance on Evidence Regarding the Broader Reorganization and Other Hiring Decisions Does Not Create a Triable Issue for the P5 Position**

The bulk of Stewart's Brief is devoted to attacking the legitimacy of Nissan's 2020 reorganization and cataloging perceived irregularities in the hiring processes for the nine other positions for which he applied. While Stewart frames this evidence as "pattern and process" evidence under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), this argument fails for several reasons.

As an initial matter, Plaintiff misrepresents the holding in *Ortiz*. The Seventh Circuit held in *Ortiz* that, in evaluating employment discrimination claims, district courts should not designate evidence as either "direct" (admissions of culpability and smoking gun evidence) or "indirect" (suspicious circumstances that might allow an

16

inference of discrimination) and should instead consider both direct and indirect evidence together. *Ortiz*, at 765. The *Ortiz* court held that all evidence – both direct and indirect – "belongs in a single pile and must be evaluated as a whole," a result that is consistent with the typical *McDonnell Douglas* framework for evaluating employment discrimination claims. *Id.* at 766.

Contrary to Plaintiff's arguments, *Ortiz* does not hold that a district court must find every piece of evidence a plaintiff identifies as probative or that unrelated evidence about different decisionmakers relevant to separate employment actions necessarily creates a genuine dispute about an unrelated hiring decision. To the contrary, *Ortiz* carefully preserved the basic relevance requirement for evidence in stating that "[r]elevant evidence must be considered and irrelevant evidence disregarded." *Ortiz*, at 765. Stewart asks this Court to disregard *Ortiz* and hold that any time a plaintiff presents evidence of a potentially discriminatory corporate reorganization, summary judgment is categorically unavailable on any other employment decision, regardless of the evidence (or lack thereof) connecting that reorganization to the specific decision at issue. That is not supported by the reasoning in *Ortiz*.

Here, the District Court was required to look at all relevant direct and indirect evidence and determine whether a reasonable juror could conclude that the adverse employment action would not have occurred but for the employee's protected characteristic. *Ortiz*, at 764–65. The District Court properly evaluated the evidence posed by the Parties and determined that Stewart had not presented evidence that a

reasonable juror could find that the P5 decision was motivated by his age. This Court should therefore affirm the District Court's grant of summary judgment.

## A. Plaintiff Does Not Connect the Reorganization to Age-Based Animus or the P5 Decision

The District Court determined that Plaintiff's claims as they relate to the elimination of his position in the 2020 reorganization and the termination of his employment were untimely because he did not file his EEOC Charge within 300 days of notice of his termination. (Dkt. 204, p. 4–6.) Plaintiff does not dispute the District Court's ruling as to untimeliness. (Plaintiff's Brief, p. 10, n.14.) Yet, he contends the District Court erred by failing to consider the following reorganization-related "evidence" in making its determination with respect to the P5 position: (1) the documents indicating that Nissan held a calibration meeting ranking various employees prior to the discussions of the reorganization; (2) the fact that Stewart was mobile with respect to the reorganization; (3) Stewart disagrees with Nissan's assessment as to which dealers were "large" versus "small" within his District in making decisions about redistribution of his dealerships for the reorganization; and (4) Stewart's job responsibilities were divided between two younger workers and then pieced back together for a younger worker.

None of these "facts" demonstrate age discrimination as to the reorganization and elimination of Plaintiff's position, let alone pretext as to the P5 position. To the extent that any of these "facts" are actually supported by the record – which Nissan

18

disputes[1] – none show any animus regarding Plaintiff's age. To be sure, the decision makers related to the reorganization believed that Stewart was not mobile when they did not select him for reassignment and the dealerships in Stewart's District were divided between four employees, two of whom were older than Stewart. (Dkt. 72, ¶¶ 5, 18, 24, 27–28.) The facts put forward by Plaintiff appear to at most demonstrate Plaintiff's personal incredulity with Nissan's decisions related to the reorganization because he would have made different decisions, but do not raise an inference of age discrimination as it pertains to the reorganization.

Even if Plaintiff had identified evidence that suggested the reorganization targeted older workers, which he has not, Plaintiff nevertheless has provided no evidence connecting the reorganization to the P5 decision. The decision makers for the reorganization were Ledieu, Lubbers, McBane, Hungerford, Beck, and DeTrude. (Dkt. 72 ¶¶ 9–10, 13, 15–16, 21, 24, 26–27, 29, 31.) In contrast, the P5 decision was made by Harrison in consultation with Ebbs. (*Id.* ¶¶ 54–58.) Plaintiff provides no evidence that Harrison or Ebbs ever spoke with any of these individuals about Stewart or his application to the P5 position. (*See* Dkt. 122, 84:5–20 (Harrison testifying he had never discussed Stewart with Ledieu, McBane, or DeTrude).) It is

---

[1] Nissan notes that Plaintiff contended to "dispute" almost ever fact stated by Nissan in its moving papers for the Motion for Summary Judgment. (*See* Dkt. 149.) However, Plaintiff did not properly dispute any material fact, as he repeatedly and grossly mischaracterized the record, made false assertions of evidence, attempted to mislead the District Court in summarizing witness testimony or describing what an exhibit depicted, and otherwise sought to rely on clearly irrelevant facts or inadmissible evidence. (*See* Dkt. 168, p. 3–8.) The "facts" that Plaintiff raises in his Brief suffer from similar deficiencies.

unclear how Plaintiff's allegations of discriminatory animus behind the reorganization has any bearing whatsoever on the P5 decision when the decision makers were different and had no interaction with each other.

Most importantly, Plaintiff has failed to show that Harrison or Ebbs exhibited any animus toward older workers to suggest a discriminatory intent in choosing not to select him for P5. To survive summary judgment, Plaintiff is required to show that the decision maker in the employment action at issue had discriminatory animus. *Serir v. Cmty. Coll. Dist. No. 514*, No. 21-2696, 2022 WL 807864, at *3 (7th Cir. Mar. 16, 2022) (holding that comments by an individual who had no role in a specific application could not permit "a reasonable jury to conclude" an employer denied a plaintiff's "application because of his age."); *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 935 (7th Cir. 2020) ("A remark or action *by a decision-maker* reflecting unlawful animus may be evidence of his or her attitudes more generally." (emphasis added)); *Hasan v. Foley & Lardner, LLP*, 552 F.3d 520, 528 (7th Cir. 2008) ("[D]erogatory remarks are relevant if they are made by someone who provided input into the adverse employment decision."). Since Plaintiff has shown no evidence of any action or comment by Harrison or Ebbs that suggest hostility to Plaintiff's age, the District Court's grant of summary judgment must be affirmed.

## B. Plaintiff Does Not Connect the Other Hiring Decisions to Any Age- Based Animus or the P5 Decision

The District Court determined that Plaintiff's failure to hire claims were untimely as to P1, P2, P7, and P10, and no reasonable jury could conclude Nissan failed to hire Stewart because of his age as to P3, P4, P6, P8, or P9 because the chosen

candidate was not outside of his protected class.[2] (Dkt. 204 pp. 6–8.)  Plaintiff does not dispute that his claims as to P1, P2, P3, P4, P6, P7, P8, P9, and P10 fail because they were either untimely and/or the chosen candidate was not under 40 years old. Yet, he does dispute that the District Court did not consider the following "evidence" related to the nine other positions in making its determination with respect to the P5 position:

- His evidence that Nissan was marking these other positions as "open," when they were actually filled by management directed transfers;

- His evidence that the hiring managers had access to the candidates' ages;

- His evidence that Henry Yu, the hiring manager for P6 and P10, was provided a displaced list that did not contain Stewart's name, and Yu was advised that offering Stewart a position would be more difficult because he required relocation;

- His speculation that there was a possibility that Dessaw and Cicchini were not truthful about not discussing Stewart's complaints with others;

- His evidence that hiring managers were advised that certain candidates were displaced by the 2020 reorganization.

(Plaintiff's Brief, pp. 29–32, 36–38.)

This "evidence" is unavailing for several reasons. In all but P5 and P7, the candidate who was selected for the position was not substantially younger than

---

[2] The only positions in which the selected candidate was outside of Plaintiff's protected class were P5 and P7. (Dkt. 72, ¶¶ 38, 43, 47, 51, 55, 61, 66, 70, 74, 78.)

Plaintiff. (Dkt. 72, ¶¶ 38, 43, 47, 51, 55, 61, 66, 70, 74, 78.) Courts do not find an inference of age discrimination in failure to hire cases where the chosen candidate is not substantially younger than the plaintiff – that is, the difference in age is less than ten years. *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997); *see O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312–13, 116 S. Ct. 1307 (1996). Here, the employees selected were the following ages: P1 was 44 years old, P2 was 58 years old, P3 was 55 years old, P4 was 51 years old, P6 was 57 years old, P8 was 62 years old, P9 was 51 years old, and P10 was 49 years old. (Dkt. 72, ¶¶ 38, 43, 47, 51, 55, 61, 66, 70, 74, 78.) Plaintiff's suggestion that the "hiring irregularities" with respect to these positions somehow demonstrates a pretext for age discrimination is not credible in light of the fact that the selected candidate were all within 7 years of Plaintiff's age and not substantially younger than Plaintiff.

Moreover, none of these "facts" demonstrate age discrimination as to the decision not to hire Plaintiff for these other nine positions, let alone pretext as to the P5 position. To the extent that any of these "facts" are actually supported by the record – which, again, Nissan disputes – none show any animus regarding Plaintiff's age. Again, these facts appear more to reveal Plaintiff's frustrations with Nissan's efforts to obtain him alternate employment following his job elimination rather than any actual age-based animus by any hiring manager for these positions. Plaintiff's assertions, which are speculative, unsupported by the record, and untethered to any age-based motivation, fail to show pretext as to any position to which Plaintiff applied.

Finally, even if Plaintiff had properly shown that there was age-based motivation in denying him the other nine positions, which he has not, Plaintiff still fails to explain how these other positions are relevant to Nissan's decision to hire Anderberg for P5. The ten positions Plaintiff applied to had eight different hiring managers: Travis Duncan (P1), Robert Woerner (P2), Joshua Taylor (P3), Ryan Bush (P4), Scott Harrison (P5), Henry Yu (P6), Berna Acena (P7), Jerry Zielinski (P8), Robert Woerner (P9), and Henry Yu (P10). (Dkt. 72, ¶¶ 37, 42, 46, 50, 54, 60, 65, 69, 73, 77.) Plaintiff has not produced any evidence that these individuals had any age-based hostility in choosing (almost exclusively older) candidates for these positions, that these individuals discussed their hiring decision regarding Stewart with each other, or that there is any other reason that one manager's decision as to Stewart had bearing on any other manager's decision. Since one hiring manager's decision is not probative of any other hiring manager's decision, the District Court did not err by failing to consider Plaintiff's "evidence" as to the other nine positions in granting summary judgment as to P5. *Serir*, at *3; *Joll*, at 935; *Hasan* at 528. The District Court's grant of summary judgment should be affirmed.

## CONCLUSION

For the foregoing reasons, Nissan asserts that summary judgment was proper in this case, and this Court should affirm the District Court's grant of summary judgment in Nissan's favor.

Dated this 14th day of May, 2026.

FOLEY & LARDNER LLP

*/s/ Amanda Hibbler*

Jeffrey Kopp (MI Bar No. P59485)
500 Woodward Avenue | Suite 2700
Tel: 313-234-7100
Fax: 312-234-2800
jkopp@foley.com
Amanda Hibbler (IL Bar No. 6339104)
321 North Clark Street | Suite 3300
Chicago, Illinois 60654
Tel: 312-832-4500
Fax: 312-832-4700
ahibbler@foley.com

*Attorneys for Defendants-Appellees*

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type limitations provided in Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(7). The foregoing brief was prepared using Microsoft Word for Microsoft 365 and contains 6,019 words in 12-point proportionately spaced Century Schoolbook font.

Dated this 14th day of May, 2026.

<div style="margin-left: 40%;">

FOLEY & LARDNER LLP

*/s/ Amanda Hibbler*
Jeffrey Kopp (MI Bar No. P59485)
500 Woodward Avenue | Suite 2700
Tel: 313-234-7100
Fax: 312-234-2800
jkopp@foley.com

Amanda Hibbler (IL Bar No. 6339104)
321 North Clark Street | Suite 3300
Chicago, Illinois 60654
Tel: 312-832-4500
Fax: 312-832-4700
ahibbler@foley.com

*Attorneys for Defendants-Appellees*

</div>

4933-6935-7738.3