# United States Court of Appeals
*for the*
# Seventh Circuit

Case No. 25-2790

MATTHEW L. STEWART,

*Plaintiff-Appellant,*

– v. –

NISSAN NORTH AMERICA, INC. and
NISSAN MOTOR ACCEPTANCE CORPORATION,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER ENTERED IN THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION IN CASE NO. 1:22-CV-04734, JORGE L. ALONSO, DISTRICT COURT JUDGE

## REPLY BRIEF OF PLAINTIFF-APPELLANT

LISA L. CLAY
LISA L. CLAY ATTORNEY AT LAW, LTD
*Attorney for Plaintiff-Appellant*
2100 Manchester Road, Suite 1603
Wheaton, Illinois 60187
(630) 456-4818
lisa@clayatlaw.com

COUNSEL PRESS (800) 4-APPEAL • (625214)

## TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. Instead of Responding to Plaintiff's Statement of Facts Nissan's Recitation of its Summary Judgment Statement of Facts is a Flagrant Attempt to Hide Material and Genuine Questions of Fact ..... 2

II. Nissan's Standard of Review Is Incorrect ..... 4

III. Stewart Has Provided Sufficient Evidence and Pointed Out Material and Genuine Disputed Facts On the Question of Whether the P5 Decision Was Motivated by His Age ..... 5

IV. Stewart Was Entitled to Rely on Evidence Regarding the Broader Reorganization and the Other Hiring Decisions Because that Evidence is Relevant to the Issue of Pretext ..... 12

a. Stewart Is Not Required to "Connect" the Reorganization and the P5 Decision ..... 12

b. Stewart Is Not Required to "Connect" the Other Hiring Decisions and the P5 Decision ..... 16

V. Nissan Has Waived the Right to Dispute Stewart's Arguments Regarding The District Court's Failure to Construe All Facts and Draw All Reasonable Inference in the Light Most Favorable to Stewart and Making Improper Credibility Determinations ..... 18

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*AMTRAK v. Morgan*,
536 U.S. 101 (2002) .......... 16, 18

*Bonte v. U.S. Bank, N.A.*,
624 F.3d 461 (7th Cir. 2010) .......... 19

*Carol v. Lynch*,
698 F.3d 561 (7th Cir. 2012) .......... 4

*Cunningham v. Austin*,
783 (7th Cir. 2025) .......... 5, 6

*Hartley v. Wisconsin Bell, Inc.*,
124 F.3d 887 (7th Cir. 1997) .......... 17

*Hasan v. Foley & Lardner, LLP*,
552 F.3d 520 (7th Cir. 2008) .......... 16

*Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*,
988 F.3d 948 (7th Cir. 2021) .......... 15

*Joll v. Valparaiso Cmty. Sch.*,
953 F.3d 923 (7th Cir. 2020) .......... 15, 16, 18

*Kellogg v. Ball State Univ.*,
984 F.3d 525 (7th Cir. 2021) .......... 16

*King v. Preferred Tech. Group*,
166 F.3d 887 (7th Cir. 1999) .......... 4

*Lowe v. Wolin-Levin, Inc.*,
No. 02-cv-1476, 2004 U.S. Dist. LEXIS 13089 (N.D. Ill. Jul. 8 2004) .......... 4

*McDonnell Douglas v. Green*,
411 U.S. 792 (1973) .......... 14

*Myers v. IHC Constr. Cos. LLC*,
No. 18-cv-4887, 2021 U.S. Dist. LEXIS 59960 (N.D. Ill. Mar. 29 2021) .......... 9

*O'Connor v. Consol. Coin Caterers Corp.*,
517 U.S. 308 (1996) .......... 17, 18

*Ortiz v. Werner Enterprises, Inc.*,
834 F.3d 760 (7th Cir. 2016) .......... 11, 12, 18

*Robinson v. PPG Indus.*,
23 F.3d 1159 (7th Cir. 1994) ........................................ 4

*Serir v. Cmty. Coll. Dist. No. 514*,
2022 U.S. App. LEXIS 7215, No. 21-2696 (7th Cir. Mar. 16, 2022) ........................ 14

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008) ........................................ 16

*Walker v. Wexford Health Sources, Inc.*,
940 F.3d 954 (7th Cir. 2019) ........................................ 4

*Webb v. Clyde L. Choate Mental Health & Dev. Ctr.*,
230 F.3d 991 (7th Cir. 2000) ........................................ 4

**Statutes and Other Authorities:**

U.S. Const. amend. VIII ........................................ 4

29 U.S.C. § 623(a)(1) ........................................ 17

29 U.S.C. § 631(a) ........................................ 17

## INTRODUCTION

Nissan's response is perplexing in its bald disregard and unwillingness to address the question raised by Stewart in this appeal: whether the *totality of the evidence* entitled him to present his case to a jury. Nissan evades, minimizes and/or mischaracterizes the countless key questions of material fact – the reappearance of Stewart's eliminated position shortly after his termination among them – by reframing those key facts as "generalized unsupported suspicions" and "bare speculation" ((D. Resp. p. 9-10).[1] Nissan's attempt to persuade this court to bless the district court's improperly narrow analysis of record evidence is made plain by its framing of the question raised on appeal: "whether a reasonable jury could conclude that Harrison's decision to hire Anderberg for the P5 position instead of Stewart was motivated by Stewart's age, rather than Anderberg's recent and directly relevant sales experience."

Emphatically, that is most certainly *not* the question raised. The question, as Stewart set forth in painstaking detail in his Opening Brief, is whether the District Court followed the rules and reviewed all available evidence – and *all* means *all*. All most certainly *does not* mean limiting the evidence to the cherry-picked and self-serving facts Nissan trots out for the second time. Indeed, Nissan's response is little more than a nearly-verbatim restatement of the same selective facts and arguments made at the summary judgment stage. Nissan's Response does nothing more than bolster Stewart's contentions: a proper review of *all* the evidence establishes

---

[1] References to Stewart's Opening Brief are cited as "P. Brief p. x" while references to Nissan's Response Brief are cited as D. Resp. p. x."

significant questions of material fact that precluded summary judgment, necessitating reversal of the District Court's judgment.

## ARGUMENT

### *I. Instead of Responding to Plaintiff's Statement of Facts Nissan's Recitation of its Summary Judgment Statement of Facts is a Flagrant Attempt to Hide Material and Genuine Questions of Fact*

Nissan apparently believes that repeating the same story repeatedly will win the day, and boldly elects to make no response whatsoever to Stewart's Statement of Facts, electing instead to restate, nearly verbatim, the facts it put forth in summary judgment (D. Resp. pp. 1-9). A comparison of the two versions of facts does nothing more than bolster Stewart's argument that there were more than sufficient questions of material fact to preclude summary judgement. A sampling of those disputes includes, but is not limited to:

- Stewart's recitation of his employment history, which included several management directed transfers (P. Brief pp. 4-6, *citing* Dkt. No. 169, ¶¶1, 3, 5, 9; Dkt. No. 150 ¶¶ 3-10, 12-23, 25-26, 32, 33; Dkt. No. 149 ¶¶5, 6, 9)[2] and Nissan's decision to make no mention of those facts.
- Stewart's facts regarding important yearly calibration meetings (P. Brief pp. 7-8, *citing* Dkt. No. 149 ¶¶ 14, 15, 20, 21, 22, 32, 33, 81, 89, 91 and 95; SA36 and SA11) and Nissan's decision to make no mention of those facts.

---

[2] Stewart's citations to the Opening Brief contains underlying reference to the Supplemental Appendix (SAxx) and the summary judgment materials: Dkt. No. 149 (Plaintiff's Response to Defendant's 56.1 Statement); Dkt. No. 150 (Declaration of Matthew Stewart) and Dkt. No. 169 (Defendants' Response to Plaintiff's Statement of Additional Facts).

- Stewart's facts regarding the January, February and March 2020 PowerPoints and their reference to the elimination of individual FSMs as well as regions (P. Brief pp. 7-9, *citing* Dkt. No. 149 ¶¶13-15, 19-21, 24-27, 29, 32, 33, 89, 91, 94-97, 99; SA20, SA14-19, SA22-29 SA36, SA39-46 and SA49-54) and Nissan's decision to make no mention of those facts.
- Stewart's analysis of the "large" versus "small" dealer analysis (P. Brief pp. 9-10, *citing* Dkt. No. 149 ¶¶11, 22) and Nissan's decision not to respond to that analysis.
- Nissan's use of management directed transfers to find positions for eight mostly younger employees (P. Brief p. 10, *citing* Dkt. No. 149 ¶19; SA45) and likely to fill the position at issue, and Nissan's decision not to respond to those material facts.
- Stewart's analysis of Nissan's false claims regarding Stewart's willingness to relocate, which is belied by Nissan's own business records (P. Brief pp. 11-12, *citing* Dkt. No. 149 ¶¶24, 26, 28, 37-80; SA20, 30; Dkt. No. 150 ¶¶31, 34, 38, 39) and Nissan's decision not to respond to those material facts and that analysis.
- Stewart's analysis of various document and testimony anomalies regarding the positions for which he applied (P. Brief pp. 12-21, *underlying citations omitted*) and Nissan's decision not to respond to that analysis.

- Stewart's reference to undisputed testimony and Nissan business records establishing that Stewart's FSM position (the one Nissan claims to have eliminated in order to terminate Stewart) "reappeared" with a substantially younger replacement/employee less than a year later (P. Brief p.22, *citing* Dkt. No. 149 ¶85; SA8) and Nissan's decision not to respond to those facts.

## *II. Nissan's Standard of Review Is Incorrect*

Nissan cites two inapplicable cases in this section of its brief, an Eighth Amendment case regarding improper medical care (*Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954 (7th Cir. 2019)) and a claim brought under the Illinois Eavesdropping Statute (*Carroll v. Lynch, 698 F.3d 561 (7th Cir. 2012)*) (D. Resp. pp. 10-11). The correct standard of review, well-settled in Seventh Circuit law, requires that the summary judgment standard be applied with "*added rigor* in employment discrimination cases, where intent and credibility are crucial issues." *Webb v. Clyde L .Choate Mental Health & Dev. Ctr.*, 230 F.3d 991, 997 (7th Cir. 2000) (emphasis added). This added rigor could not be more important here and is the proper standard in this context. *See, e.g. King v. Preferred Tech. Group*, 166 F.3d 887, 894 (7th Cir. 1999) (summary judgment reversed); *Robinson v. PPG Indus.*, 23 F.3d 1159, 1166 (7th Cir. 1994) (same); *Lowe v. Wolin-Levin, Inc.*, No. 02 cv 1476, 2004 U.S. Dist. LEXIS 13089 at *8 (N.D Ill. Jul. 8 2004) (summary judgment denied).

### *III. Stewart Has Provided Sufficient Evidence and Pointed Out Material and Genuine Disputed Facts On the Question of Whether the P5 Decision Was Motivated by His Age.*

Nissan's misplaced reliance on *Cunningham v. Austin*,[3] a recent affirmation of summary judgment in the hiring context (D. Resp. p. 11), is both unsurprising and telling. Unlike this case, which contains a rich and complex history leading up to the hiring decision at issue – a complex history Stewart alleges must be part of the summary judgment analysis – *Cunningham* is a straightforward promotion denial. *Cunningham* has no underlying Reduction in Force (RIF) and therefore no disputed facts about that RIF. *Cunningham* has no magical reappearance of the plaintiff's original position that was claimed to be "eliminated." And there are no disputed facts about the purported "legitimate non-discriminatory reason" put forth by the defendant. In *Cunningham*, the District Court found that the plaintiff had failed to demonstrate the employer's stated reasons were a pretext for discrimination, finding that her claims were largely based on subjective beliefs without corroborative evidence.

Here, Appellant Stewart has presented ample and specific evidence that Nissan's "facts" regarding the hiring process are suspect and not according to Nissan's normal hiring process, thus allowing for the inference of discriminatory intent. Stewart had the experience for the P5 position from within Nissan and the industry as a whole (P. Brief pp. 4-6, *citing* Dkt. No. 169, ¶¶1, 3, 5, 9; Dkt. No. 150 ¶¶ 3-10, 12-23, 25-26, 32, 33; Dkt. No. 149 ¶¶5, 6, 9); Stewart was willing and able

---

[3] 125 F.4th 783 (7th Cir. 2025)

to relocate to keep a position within Nissan according to Nissan business records (P. Brief p. 11-12, *citing* Dkt. No. 149 ¶¶24, 26, 28, 37-80; SA20, 30; Dkt. No. 150 ¶¶31, 34, 38, 39) and Stewart actually applied for the posting, as opposed to the chosen candidate, who was advised to apply *after* the posting had been closed (P. Brief pp. 14-16, *citing* Dkt. No. 149 ¶¶54, 55, 56, 58, 60, 84; Dkt. No. 150 ¶¶48-50). Nissan Human Resources scheduled Stewart's exit interview *while he was still interviewing for roles*, including P5 (P. Brief p. 15, *citing* Dkt. No. 149 ¶84), then the hiring manager lied to Stewart, falsely stating that the role had been filled, when the position remained open at least another month after Stewart's termination (P. Brief P. 15, *citing* Dkt. No. 149 ¶56).

Even if this Court elects to take the same narrow view of the facts that should be evaluated – a position Stewart disputes, but nonetheless acknowledges for sake of argument, summary judgment was still improper. Contrast *Cunningham* to the disputes at issue here, by comparing Plaintiff's version of events (and most importantly the timing of those events) regarding the P5 position with Nissan's:

| **Plaintiff's Opening Brief/ Underlying Argument** | **Analysis** |
|---|---|
| Erik Anderberg had been unemployed for approximately ten months when he interviewed for a Regional Service Lane Analyst position with Regional Aftersales Manager Greg Ebbs on July 9, 2020 (Dkt. No. | Nissan provides no response to this fact at Summary Judgment or in its Response. |

| **Plaintiff's Opening Brief/ Underlying Argument** | **Analysis** |
|---|---|
| 149 ¶58; *citing* Anderberg Dep. Ex. 2 at Nissan_000938 (Page 10 of 20 of Dep. Ex. 2 in Dkt. No. 161-10). | |
| Anderberg had a "Total Score Primary Questionnaire of 200, [for the Fixed Operations position] while the other two candidates, Stewart and another current employee, had scores of 300" (Dkt. No. 149 ¶56 *citing* Dessaw Dep (Dkt. No. 133) Ex. 13; Harrison Dep. (Dkt. No. 136) 75:5-21). | Nissan provides no response to this fact at Summary Judgment or in its Response. |
| Anderberg claimed that during the July 9, 2020, interview Ebbs encouraged him to apply for the Fixed Operations role at issue (Id., ¶56 citing Anderberg Dep. 42:13-17; 45:22-25 (Dkt. No. 161-10)); but offered no explanation for why it took him over a month to do so (Dkt. No. 149, ¶58, citing Anderberg Dep. Ex. 2 Nissan_000934 (Page 6 of 20 of Dep. Exhibit 2 in Dkt. No. 161-10) or how he | Nissan provides no response to these facts at Summary Judgement or in its Response.<br><br>Anderberg had not even applied for the P5 position until after Plaintiff was terminated. |

| **Plaintiff's Opening Brief/ Underlying Argument** | **Analysis** |
| --- | --- |
| got an interview so quickly (the next day) (Id.). Hiring Manager Scott Harrison testified that Ebbs told Harrison that Anderberg was "somebody that I should talk to" (Dkt. No. 149 ¶58 citing Harrison Dep. 40:2-13 (Dkt. No. 136)) – possible code for a management directed transfer. Apparently so, because Anderberg received an offer less than 24 hours after his first (and only) interview with Harrison (Dkt. No. 149 ¶56 citing Anderberg Dep. Ex. 2, Nissan_000943 (Page 15 of 20 in Dep. Ex. 2 of Dkt. No. 161-10). | Anderberg interviewed for the P5 position on August 13, 2020 – 10 days after Plaintiff had been terminated.<br><br>Anderberg was offered the position less than 24 hours after his interview. |
| Scott Harrison was the hiring manager for the Iowa role; his boss, Greg Ebbs, had advised Harrison that Stewart was "on a displaced list" (Dkt. No. 149 ¶58 *citing* Harrison Dep. (Dkt. No. 136) 57:9-14). | Nissan provides no response to these facts at Summary Judgement or in its Response. |

Instead of providing a response to Stewart's contentions, Nissan simply repeats the same selected contentions it made at the district level, ignoring all of the

context and timing issues raised by Plaintiff and attempting to narrow the inquiry at issue to whether "the hiring manager did not 'sincerely believe' the rational when making his final decision" (D. Resp. p. 12). This sleight of hand must fail, because even if this Court narrows its inquiry to Nissan's liking, Stewart has presented questions of material and genuine dispute regarding Harrison's reasons.

Nissan first claims that Stewart "provides no evidence whatsoever that Harrison had access to or considered [Stewart's] age in selecting Anderberg," by attempting to minimize record evidence – Nissan documents – that suggests all hiring managers had access to years with the company, tenure with the company, and age. Drawing all reasonable inferences in favor of the non-moving party, as the District Court was required to do, (*see, e.g. Myers v. IHC Constr. Cos*. LLC, No. 18-cv-4887, 2021 U.S. Dist. LEXIS 59960, at *28 (N.D. Ill. Mar. 29 2021), the Court should have considered the possibility that Harrison had access to this information.

Nissan's analysis of Harrison's knowledge of Stewart's displaced status suffers from the same failing: an unwillingness to acknowledge that at the summary judgment stage, Stewart, not Nissan, was entitled to make all reasonable inferences in his favor, not the other way around. It was, therefore, reasonable for Stewart to infer that Harrison's knowledge of Stewart's displaced status impacted his candidacy unfavorably, particularly given that all of the displaced employees, many of whom made the same attempts to remain employed that Stewart did – were over the age of 45. (D. Resp. p. 4)[4].

---

[4] Matt Stocking, the 34 year-old, declined his management directed transfer (P. Brief p. 10 fn 6 *citing* Dkt. No. 149 ¶86).

Nissan's argument regarding management directed transfers is one of several examples of Nissan failing to provide specific response to Stewart's statements of fact (no doubt to avoid having to acknowledge disputed material questions of fact), electing instead of challenge the facts on other grounds. Here, Nissan claims without citation that Stewart failed to "authenticate" the documents Plaintiff cites to in the underlying record. This argument must fall flat when the documents at issue are Nissan business records from Nissan's Workday system relied upon by both Stewart and Nissan in the underlying summary judgment briefing. Nissan does not want to engage on the issue of management directed transfers because it exposes the favoritism for younger employees and opens a can of worms for them. First, the fact that management directed transfers is the process by which younger less qualified employees were given roles in the restructuring (P. Brief p.10 *citing* Dkt. No. 149 ¶19; SA45) and second, the fact that nearly all of the claimed "open" positions for which Stewart applied – including the P5 position at issue here – appear to have been filled with management directed transfers (P. Brief p. 37 *citing* ECF Dkt. No. 149 ¶¶39, 52, 56, 67, 71, 76; Dkt. No. 156 ¶¶11, 13; SA3).

Nissan's attempt to mischaracterize Stewart's timing arguments (D. Resp. p. 14) (that Anderberg did not apply until after the position was closed and Plaintiff was terminated) is addressed above, and speaks to Nissan's desperation to avoid acknowledging the disputed material facts surrounding their legitimate non-discriminatory reason. The same applies for Nissan's arguments regarding Harrison's statement to Stewart that another candidate had been chosen (D. Resp.

p. 14-15). Nissan attempts to recast what is in essence another timing issue: Nissan's own documents establish that a candidate was not chosen until after Stewart was terminated, and if Stewart was told another candidate was chosen before he was terminated (August 3, 2020) and Anderberg was not offered the position until several weeks later, Stewart is not relying on his personal knowledge; Stewart is making a reasonable inference that Harrison's statement that another candidate had been chosen was a lie based on dates contained in Nissan's own business records.

Nissan makes Stewart's argument for him by concluding its pretext argument (Section B, R. Brief pp. 12-15) by stating that Harrison's lie "does not, *standing alone*, permit an inference of age discrimination" (D. Resp. p. 15, *emphasis added*). In the next section, ineptly titled "Stewart's Subjective Assessment of His Qualifications Does Not Establish Pretext," Nissan argues that Stewart's reference to his higher Total Score Primary Questionnaire "fails to demonstrate pretext." Stewart never argued – and does not argue here – that either of these facts *standing alone* support pretext. Rather, Stewart has argued, consistent with *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765-66 (7th Cir. 2016), that even a review of the limited facts Nissan suggests are material to the hiring decision supports such a finding. Said another way, even if Nissan's argument regarding the scope of the record is accepted, Stewart should be allowed to present the hiring decision to a jury.

### IV. *Stewart Was Entitled to Rely on Evidence Regarding the Broader Reorganization and the Other Hiring Decisions Because that Evidence is Relevant to the Issue of Pretext*

#### a. *Stewart Is Not Required to "Connect" the Reorganization and the P5 Decision.*

Nissan mischaracterizes Stewart's argument as requiring "this Court to disregard *Ortiz* and hold that any time a plaintiff presents evidence of a potentially discriminatory corporate reorganization, summary judgment is categorically unavailable on any other employment decision, regardless of the evidence (or lack thereof) connecting that reorganization to the specific decision at issue" (D. Resp. p. 17). That is not Plaintiff's argument – *at all*. What distinguishes this case, and what gave rise to the appeal, was the District Court's failure to comply with the legal authority governing summary judgment: making reasonable inferences in Stewart's favor and taking an overly myopic view of "relevant facts." And as discussed above, even if this Court agrees with that myopic view, questions of material fact *even as to those limited facts* preclude summary judgment, allowing this Court to reverse and remand without even reaching Stewart's argument that the factual record chosen for review by the District Court was improperly narrow.

The crux of the dispute between the parties in evaluating the larger record is what evidence is "relevant" and what evidence is "irrelevant" in the hiring context. Nissan appears to believe that that the only relevant evidence at issue is Harrison's testimony regarding why he allegedly "chose" Anderberg. But as discussed above, even that evidence lacks context.

More importantly, Harrison's "choice" took place in the broader context of a reorganization that put Plaintiff on a displaced employee list and eliminated a position under the guise of a "realignment" that eliminated Stewart's position, only to have the position be reinstated with a much younger employee within the year. But Nissan's response tries to minimize that last key fact, electing instead to claim that Stewart's reorganization arguments are limited to four pieces of "reorganization-related 'evidence'" – and then suggesting that this evidence is not relevant because it lacked a sufficient link to the P5 position (D. Resp. pp. 18-20).

Nissan's argument misses the mark for a number of reasons, not the least of which is the fact that Stewart has cited to more than four pieces of "reorganization-related evidence" he believes merit the Court's review and attention. Stewart takes issue with more than the four repackaged issues Nissan plucks for mention (calibration, mobility, large versus small dealers and the magical reappearance of his role post-termination), not the least of which include the fact that Nissan documents reflect individual people's names in FSM position, not regions or districts for elimination (P. Brief p. 7-9 *citing* Dkt. No. 149 ¶¶ 13-15, 19-21, 24-27, 29 32, 33, 89, 91, 94-97, 99, SA20, SA14-19, 22-29 36, 39-46 and 49-54)) and the use of management directed transfers to provide new roles for eight mostly younger employees (P. Brief p. 10 *citing* Dkt. No. 149 ¶19; SA45).

Far from merely indicating "Plaintiff's personal incredulity with Nissan's decisions," (D. Resp. 19), these facts, when viewed in the light most favorable to Stewart and with all reasonable inferences drawn, paint a picture of a hiring

landscape riddled with barriers to employment for not just Stewart but the other six older workers who were terminated at the same time. And that hiring landscape is inescapable context for the P5 hiring decision.

Nissan's most blatant mischaracterizations are legal ones, all relating to their desperate attempt to limit relevant evidence to their alleged decision-makers Harrison and Ebbs.[5] First, Nissan states that *Serir v. Cmty. Coll. Dist. No. 514*[6] stands for the principle that "[t]o survive summary judgment, Plaintiff is required to show that the decision maker in the employment action at issue had discriminatory animus" and claiming that the holding of the case was "that comments by an individual who had no role in a specific application could not permit "a reasonable jury to conclude" an employer denied a plaintiff's "application because of his age" (D. Resp, p. 20). That is neither the holding of *Serir* nor the law. Rather, the entirety of the Court' discussion of *Serir's pro se* plaintiff's age claim (after affirming most of the case on statute of limitations grounds) is as follows:

> Second, *McDonnell Douglas*[7] to the side, Serir's evidence would not permit a reasonable jury to conclude that ICC denied Serir's final application because of his age (citations omitted). He cites the statements from the faculty member who said, in the context of his second application, "do not expect too much [from ICC] toward your retirement" and his "personality" is a problem. But even if the first comment alludes to his age (the second comment plainly does not), it is

---

[5] Even this is a disputed material fact. First, Harrison and Ebbs may or may not have been the decision-makers at all. With reasonable inferences drawn in Stewart's favor, the fact-finder must consider other possible decision-makers including human resources, particularly in light of the fact that it was HR that decided to schedule an exit interview while this interview process was ongoing (P. Brief p. 15 *citing* Dkt. No. 149 ¶84).

[6] No. 21-2696, 2022 U.S. App. LEXIS 6782 (7th Cir. Mar. 16, 2022).

[7] *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

> insufficient because Serir does not assert that this member had any role in his third application. He also cites a statement from the dean who referred to how long it takes to obtain tenure. But again, even if this comment alludes to age, given the successful applicant's similar age, the comment does not permit an inference that ICC refused to hire him because of his age. *See Igasaki v. Illinois Dep't of Fin. & Pro. Regul., 988 F.3d 948, 961 (7th Cir. 2021).*

Nissan then plucks a phrase from the *Joll* case ("A remark or action *by a decision-maker* reflecting unlawful animus may be evidence of his or her attitudes more generally.") (D. Resp. p. 20), but the *Joll* case supports Stewart's arguments:

> In considering a defendant's attempt to neuter a sexist or racist comment as a stray remark, a court deciding a summary judgment motion must keep in mind ***its duty to consider the evidence as a whole and to do so in the light reasonably most favorable to the non-moving party.*** [...] The remarks are evidence, which ***together with the other evidence*** in this case could lead a jury to conclude ... that the company engaged in unlawful discrimination...

*Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 935 (7th Cir. 2020)(*emphasis added*).

Nissan's mention of the *Joll* case *at all* is somewhat baffling given the *Joll* court's holdings regarding Stewart's primary arguments: the necessity of drawing facts and inferences in favor of the non-moving party (953 F.3d at 924-25) and the importance of "[l]ooking at the evidence as a whole, as we must…" (953 F.3d at 929). Stewart submits that *Joll* is a textbook example of the broader inquiry he believes is appropriate here. Instead of limiting its inquiry to only what was in the mind of the alleged decision-makers, the *Joll* court analyzed company hiring practices and policies and their application to the circumstances of the case; the interview process

and anomalies in those processes; references and the weight given to references. *Joll*, 953 F.3d 252-27.

Nissan also cites *Hasan v. Foley & Lardner, LLP*,[8] another (pre-*Ortiz,* non-age) case that was remanded because the Court properly made all reasonable inferences in favor of the non-moving party plaintiff (*Hasan v. Wisconsin Bell, Inc*., 552 F.3d 520, 527-28 (7th Cir. 1997)) and refused to make credibility findings, reserving them for the jury (*Id*. at 530). Said another way, *Joll* and Hasan are helpful roadmaps for Stewart, with all roads leading to reversal and remand.

***b. Stewart Is Not Required to "Connect" the Other Hiring Decisions and the P5 Decision.***

Nissan tries the same tactic with regard to evidence Stewart sets forth as relevant to the inquiry regarding the other positions, but with a twist: again without citation, Nissan suggests that Plaintiff may not rely on evidence related to the P1, P2, P7 and P10 positions because the District Court found his claims untimely (D. Resp. p. 21). This flies in the face of well-established law that allows a plaintiff to use "prior acts [i.e. untimely claims] as background evidence in support of a timely claim." *Kellogg v. Ball State Univ*., 984 F.3d 525, 529 (7th Cir. 2021) *citing AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002).

---

[8] Hasan also reminds us that "'behavior toward or comments directed at other employees in the protected group' is one type of circumstantial evidence that can support an inference of discrimination," (*Hasan,* 552 F.3d at 529 *citing Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008)) validating Stewart's reliance on age-based statements made to other displaced employees during the same time period as the P5 hiring process (P. Brief p. 26 *citing* Dkt. No. 149 ¶¶82-84, 90-92).

As with Stewart's reorganization evidence, Nissan first improperly summarizes and then attempts to minimize or dismiss the evidence. First, Nissan misrepresents the holding of *Harley*, claiming it to be that "[c]ourts do not find an inference of age discrimination in failure to hire cases where the chosen candidate is not substantially younger than the plaintiff – that is, the difference in age is less than ten years" (D. Resp. p. 22). The actual holding of *Hartley* accounts for important nuance, as follows:

> While we suspect that the answer depends to some extent on the circumstances in a case, we consider a ten-year difference in ages (between the plaintiff and her replacement) to be presumptively "substantial" under *O'Connor*. In cases where the disparity is less, the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant." In that instance, the issue of age disparity would be less relevant.

*Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997).

Stewart believes that the totality of his evidence does suggest that Nissan found Stewart's (and the six other older workers who were also selected for termination) age "significant." The chosen candidate Anderberg was 34, substantially younger than Stewart (51). Further, why else would the only people who were *not* offered management directed transfers and an opportunity to stay employed with Nissan *all* be over the age of 47? This is consistent with Supreme Court guidance on this issue, which is also not mentioned by Nissan:

> The discrimination prohibited by the ADEA is discrimination 'because of [an] individual's age,' 29 U.S.C. § 623(a)(1), though the prohibition is 'limited to individuals who are at least 40 years of age,' §631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older.

> The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to '40 or over' discrimination) when a 40-year old is replaced by a 39-year old than when a 56-year old is replaced by a 40-year old.

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

Rather than addressing the countless material questions of fact at issue regarding the positions for which Stewart applied (P. Brief pp. 12-21 *citations omitted*), Nissan elects instead to restate its baseless suggestion that the facts Stewart put forth only "reveal Plaintiff's frustration with Nissan's efforts to obtain his alternative employment following his job elimination rather than any actual age-based animus by any hiring manager for these positions" (D. Resp. p. 22). But Stewart is not required to "connect" all evidence to the P5 position; that would fly in the face of both *Ortiz* and *Morgan*. Stewart has done what is required of him: he has set forth evidence that, taken together, in its entirety – not constrained to the actions and claimed animus of the alleged hiring managers – supports a finding of pretext.

### ***V. Nissan Has Waived the Right to Dispute Stewart's Arguments Regarding The District Court's Failure to Construe All Facts and Draw All Reasonable Inference in the Light Most Favorable to Stewart and Making Improper Credibility Determinations;***

"The maxims of summary judgment are familiar – no weighing the evidence, no credibility determinations, draw all speculative inferences in favor of non-movant – but they are more easily recited than applied." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 928 (7th Cir. 2020). As Stewart argued in his Opening Brief, "this

directive is no small task by any measure, particularly where, as here, the summary judgment record is hundreds of pages of briefing and thousands (*yes, thousands*) of pages of exhibits." (P. Brief pp. 26-27). Nissan does not appear to have addressed this argument (Section III of Stewart's opening brief) in any way. Nissan does not argue that the District Court did as required and made all reasonable inferences in the light most favorable to Stewart as the non-moving party. In fact, the phrases "reasonable inference" and "light most favorable" do not appear in Nissan's Response, period. Nor does Nissan attempt to claim that the District Court did not make improper credibility determinations – the term "credibility" does not appear in Nissan's Response, either.

It is well settled law that failure to respond to an argument results in waiver. See, e.g. *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010). Where, as here, a party elects to completely ignore an entire argument, this Court is left with "no choice but to accept" the argument presented (*Id.).* In this case, that means that Nissan can no longer dispute Stewart's claim that the District Court erred in failing to construe all facts and draw all reasonable inferences in the light most favorable to him. Nor can Nissan dispute Stewart's claim that the District Court made improper credibility determinations. Nissan has therefore conceded Stewart's arguments as to these points.

## CONCLUSION

Nissan's "Response" is not a response at all. Indeed, Nissan has waived any argument that the District Court applied the wrong standard and made improper

credibility determinations; failed to acknowledge, let alone explain, countless material statement of facts; and flagrantly misrepresented this circuit's existing law regarding the legal principles that apply to both the summary judgment standard and the state of employment in the discrimination context generally and the hiring process specifically. Summary judgment was improper on this record. This Court should reverse the District Court's judgment and remand the case for trial.

Dated: June 4, 2026

Respectfully submitted,

/s/ *Lisa L. Clay*

Attorney for Plaintiff-Appellant

Lisa L. Clay Attorney at Law, Ltd.
(ARDC No. 6277257)
2100 Manchester Rd., Suite 1603
Wheaton, IL 60187
630.456.4818
Email: lisa@clayatlaw.com

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 5,106 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Century style font.

Dated: June 4, 2026

*/s/ Lisa L. Clay*
Lisa L. Clay
Attorney for Plaintiff-Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2026, the Reply Brief of Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Lisa L. Clay*
Lisa L. Clay
Attorney for Plaintiff-Appellant